**William Leslie HYER, Jr., Appellant,**

**v.**

**PITTSBURGH CORNING CORP., Appellee,**

**and**

**Amatex Corp.; Atlas Asbestos Corp., Ltd.; Armstrong World Industries, Inc.; Armstrong Contract & Supply, Inc.; The Celotex Corp., Empire Ace Insulation Manufacturing Corp., Eagle-Picher Industries, Inc.; Forty-Eight Insulation, Inc.; Pabco Industrial Products Division; The Flintkote Co.; Raybestos-Manhattan, Inc.; Rock Wool Manufacturing Co.; GAF Corp.; Garlock, Inc., Precision Seal Div.; Standard Asbestos Mfg. & Insulating Co.; Johns-Manville Sales Corp.; Johns-Manville Amiante Canada, Inc.; Unarco Industries, Inc.; Keene Corp.; National Gypsum Co.; Crown Cork & Seal Co. Inc.; Nicolet, Inc.; Owens-Corning Fiberglas Corp.; Owens-Illinois, Inc.; H.K. Porter Co., Inc.; Defendants.**

**No. 83–2117.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1984.

Decided May 7, 1986.

Rehearing and Rehearing En Banc Denied June 18, 1986.

· Vickie Bletso, Thomas F. Taft (Kenneth E. Haigler, Taft, Taft & Haigler, Greenville, N.C., Joseph F. Rice, Blatt & Fales, Barnwell, S.C., on brief), for appellant.

Richard V. Bennett (Bell, Davis & Pitt, Winston-Salem, N.C., on brief), for appellee.

Before WINTER, Chief Judge, WILKINSON, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiff, formerly employed as a full-time insulator, appeals from the summary judgment entered for Pittsburgh Corning Corporation (Pittsburgh) in his suit alleging that he contracted asbestosis from exposure to asbestos-containing products manufactured by Pittsburgh.[1] The district court ruled that plaintiff's suit was barred by a North Carolina statute of repose.

After the appeal was argued, we stayed decision, because we were advised that a case pending before the Supreme Court of North Carolina presented issues which, when decided, might be determinative of our case. That case, *Wilder v. Amatex Corporation*, 314 N.C. 550, 336 S.E.2d 66 (1985), has been decided, and counsel in our

---

1. In his original action, plaintiff sued twenty-seven manufacturers or suppliers of asbestos. The cases against twenty-five were settled or disposed of prior to the ruling of the district court. Since then, the case against one of the two remaining defendants, Fibreboard Corporation, has been settled. This appeal thus concerns only plaintiff's claim against Pittsburgh.

case have been afforded the opportunity to comment on the effect of the decision.

We reverse on the authority of *Wilder* and remand the case to the district court for further proceedings.

### I.

The operative facts are that for the period 1942 through 1976, during his work career as an insulator, plaintiff had numerous and repeated exposures to asbestos-containing products in various shipyards and with various shipbuilding companies and general construction contractors in various states. While there was evidence that he was last exposed to asbestos products of Pittsburgh in Tennessee in 1976, there was also evidence, uncontroverted by plaintiff, that Pittsburgh sold its last asbestos products in 1972.

In any event, plaintiff began during 1976 or 1977 to experience symptoms which could be attributed to asbestosis. He submitted to a medical examination in 1978, and he was told that he did not have asbestosis or any other asbestos-related disease. Not until March 4, 1981 was plaintiff first diagnosed as having asbestosis, as a result of an examination conducted by Dr. Irving Selikoff in New York City. Suit was filed on December 17, 1981.

In concluding to give summary judgment to Pittsburgh on the North Carolina statute of repose, the district court reasoned that, since plaintiff did not know or have reason to know that he suffered from an asbestos-related disease prior to March 4, 1981, his cause of action did not accrue until that date. Therefore his action filed on December 17, 1981 was timely filed within the three-year statute of limitations prescribed by N.C.G.S. § 1–52(5).[2] However, to maintain his action, plaintiff must also overcome the hurdle of the statute of repose, N.C.G.S. § 1–50(6), which provides:

No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Deeming undisputed the material fact that Pittsburgh sold no asbestos-related products after 1972, the district court concluded that plaintiff's suit was barred by N.C.G.S. § 1–50(6).

After arriving at this fundamental conclusion, the district court ruled also that North Carolina would apply § 1–50(6) in a diversity action even if plaintiff's injury occurred in Tennessee or Kentucky, two of the places in which he had been exposed to Pittsburgh's asbestos products, *see Tiffenbrun v. Flannery*, 198 N.C. 397, 151 S.E. 857 (1930), and that § 1–50(6) was constitutional, *see Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982).

### II.

Our function in this diversity case is to predict what the Supreme Court of North Carolina would decide were the determinative issue presented to it. We think that *Wilder*, decided after the district court gave judgment, requires a prediction contrary to the result reached by the district court.

*Wilder*, like the case at bar, involved an asbestos-related disease claim. It arose prior to the enactment of § 1–50(6), when the applicable statute was N.C.G.S. § 1–15(b) (Interim Supp.1976) (repealed 1979). That statute provided:

(b) Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services,

---

**2.** The pertinent provisions of § 1–52(5) follow the statement in § 1–46 that "[t]he periods for the commencement of actions ... are as set forth in this Article", and are:

Within three years an action—

(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated.

having as an essential element bodily injury to the person or a defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

In *Wilder*, plaintiff was able to establish his exposure to asbestos-containing products during the years preceding diagnosis of his asbestosis disease. Defendants, however, were able to show that they had ceased selling this product more than ten years before suit was filed. Applying § 1–15(b) to these facts, the trial court gave summary judgment for defendants.

On appeal, Justice Exum for the North Carolina Supreme Court characterized the issue before the court and the key to decision as "Whether entry of summary judgment in favor of defendants ... was proper depends on whether N.C.Gen.Stat. § 1–15(b) ... applies to claims arising out of disease." 336 S.E.2d at 68–69. The court held that the statute "was never intended by the legislature to apply to claims arising out of a disease." *Id.* at 69. It therefore ruled that Wilder's claim was not barred by § 1–15(b). It reached this result as to the intent of the legislature in enacting the statute by looking to the statute's purpose, the state of the law to which the statute was addressed and the changes in that law that the statute was designed to effect. The North Carolina Supreme Court found that the statute was not intended to be a statute of limitations governing all negligence claims, but rather "[i]ts primary purpose was to change the accrual date from which the period of limitations begins to run on latent injury claims," and to add "a ten-year statute of repose ... to latent injury claims." *Id.* Prior to enactment of the statute, North Carolina law had held that an injury, however slight and imperceptible, would trigger the running of the statute of limitations. This rule was ap-

plied in medical malpractice cases and cases involving a claim of breach of warranty in the purchase of defective products. After discussing the cases in which the old rule was applied and to which the statute was directed, the court said:

> None of the cases toward which the statute was directed involved disease. They all involved situations in which it was possible to identify a single point in time when plaintiff was first injured.
>
> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent. *See, generally, Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076, 1083 (5th Cir.1973), *cert. denied*, 419 U.S. 869 [95 S.Ct. 127, 42 L.Ed.2d 107] (1974) (asbestosis; disease does not ordinarily manifest itself until "ten to twenty-five or more years after exposure") ...

*Id.* at 70. After reviewing cases which concluded that, with respect to occupational diseases, North Carolina has always recognized that exposure to a disease-causing agent is not itself an injury, the court concluded that there was "no need in 1971 [the date of enactment of § 1–15(b)] for the legislature to treat diseases as 'latent injury claims.'" *Id.* at 72. This lack of need, coupled with other legislative history, led to the conclusion that "the legislature intended the statute to have no application to claims arising from disease." *Id.* at 73.

We of course are cognizant that *Wilder* concerned § 1–15(b) while we construe § 1–50(6). But the implications of *Wilder* with respect to the construction to

be placed on § 1–50(6) have been cogently analyzed and considered in Gardner v. Asbestos Corporation, Ltd., Civ.Action No. C-C–83–0723–P, W.D.N.C. (March 7, 1986) (unpublished), and we agree with the conclusions of Judge Sentelle in that case:

> While it is true as defendants argue that the purpose of Section 1–50(6) is broad in its protection of manufacturers and vendors from the results of long forgotten acts, nothing in the legislative history cited to the Court by defendant gives any indication that the Legislature intended to expand the definition of personal injury beyond that intended in the statute construed in *Wilder*. It appears to this Court that an accurate forecast of the North Carolina Supreme Court's construction of Section 1–50(6) is most plainly instructed by the Court's construction of the earlier statute of repose. That decision makes it plain ... that the State Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it.

In predicting what the Supreme Court of North Carolina would hold were the question presented to it, we therefore conclude that N.C.G.S. § 1–50(6) does not bar plaintiff's claim for damages for asbestosis even though the product of Pittsburgh alleged to give rise to the injury was purchased more than six years prior to the alleged onset of the disease. In this connection, we note that *Wilder* also confirms the holding of the district court here that when plaintiff sued within three years after his illness was first diagnosed, his suit was timely under N.C.G.S. § 1–52(5).

REVERSED AND REMANDED.