818 F.2d 1098
 Prod.Liab.Rep.(CCH)P 11,080
James E. BURNETTE, Appellant,
v.
NICOLET, INC.; Eagle-Picher Industries, Inc.; The Celotex
Corporation; Owens-Corning Fiberglass Corp.; Keene
Corporation; Forty-Eight Insulation, Inc.; National Gypsum
Company; Raymark Industries, Inc.; Carey Canada, Inc.;
Covil Corporation; Pittsburgh Corning Corporation; H.K.
Porter Company, Inc. and North Brothers an Unincorporated
Division of National Service Industries, Inc., Appellees,
COMBUSTION ENGINEERING, INC.; Amchem, Inc.; Rock Wool
Manufacturing Co., Inc.; GAF Corporation; Fibreboard
Corporation; Owens-Illinois, Inc.; Amatex Corporation;
Unarco Industries, Inc.; Empire Ace Insulation Mfg. Corp.;
Atlas Asbestos Company; W.R. Grace & Company; US Mineral
Products Corporation and U.S. Gypsum Company, Defendants,
v.
UNITED STATES of America, Appellee.
 No. 84-2063.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 10, 1986.
Decided July 25, 1986.
 
 Mona Lisa Wallace, Salisbury, N.C. (Blatt & Fales, Barnwell, S.C., on brief), for appellant.
 Thomas N. Barefoot (Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., on brief), and Gerard H. Davidson, Jr. (Timothy Peck, Smith, Moore, Smith, Schell & Hunter, Greensboro, N.C., Richard V. Bennett, Bell, Davis & Pitt, Winston-Salem, N.C., on brief), for appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Plaintiff James Burnette appeals the district court's grant of two summary judgment motions in favor of defendants and dismissal of all of Burnette's claims. Invoking diversity and admiralty jurisdiction, Burnette filed this action alleging that he contracted asbestosis from exposure to asbestos-containing products manufactured by twenty-six named defendants.[1] The district court ruled that plaintiff's diversity jurisdiction claims were barred by a North Carolina statute of repose. The court also dismissed Burnette's admiralty jurisdiction claims.
 
 
 2
 As to the diversity jurisdiction claims, we reverse on the authority of Hyer v. Pittsburgh Corning Corp., 790 F.2d 30 (4th Cir.1986), and Silver v. Johns-Manville Corp., 789 F.2d 1078 (4th Cir.1986), and remand the case to the district court for further proceedings. We affirm, however, the district court's dismissal of the admiralty jurisdiction claims on the authority of Oman v. Johns-Manville Corp., 764 F.2d 224 (4th Cir.1985) (en banc).I
 
 
 3
 Burnette has suffered intermittent exposure to asbestos throughout his working career from October 1943 until his retirement in late 1981, except from approximately 1946 to 1950 when he did not work in the insulation business. Burnette was first exposed to asbestos in his job as an insulator at the North Carolina Shipbuilding Co. in October 1943. Burnette's shipyard employment there comprised approximately 9% of the time he spent working as an insulator. He recalls seeing the products of only three defendants at the shipyard, however. All his work there was done on incompleted hulls sitting powerless on the water or in land-based construction shops. Burnette's other shipyard employment occurred in mid-1976 through 1981 when he worked briefly for the Norfolk Naval Shipyard in Portsmouth, Virginia. During that time, he made several trips to Virginia where his job involved removing old asbestos insulation and replacing it with asbestos-free insulation on the sides of the drydock. Burnette was unable, however, to identify the brand names or manufacturers of any of the asbestos products he removed during this time.
 
 
 4
 Burnette's non-shipyard employment involving exposure to asbestos-containing materials began in 1950 and ended in 1981 in his work as an insulator in the construction industry. However, Burnette admitted in his deposition that the insulation products which he installed were asbestos-free beginning in 1976 until the end of his career, though during that time he continued to remove previously installed asbestos insulation. He does not know the brand names or manufacturers of those products.
 
 
 5
 Burnette was first diagnosed as having an asbestos-related disease in December 1981. He filed this action on August 4, 1983, stating four causes of action pursuant to the court's diversity and admiralty jurisdiction, on the theories of negligent failure to warn, breach of implied warranty, strict liability, and fraudulent concealment and/or conspiracy. The defendants filed two motions for summary judgment on the ground that Burnette's diversity jurisdiction claims were barred by North Carolina's six-year product liability statute of repose, N.C. Gen. Stat. Sec. 1-50(6), and on the ground that the district court lacked admiralty jurisdiction over Burnette's claims. The lower court issued two memorandum decisions and a judgment granting the defendants' summary judgment motions and dismissing both Burnette's diversity and admiralty jurisdiction claims. In granting summary judgment on the diversity claims, the court ruled that plaintiff's action was barred by N.C. Gen. Stat. Sec. 1-50(6)[2] because Burnette's last exposure to any asbestos products occurred in 1976 and suit was not filed until 1983, thus exceeding the six-year period of repose.[3] The court dismissed Burnette's fraudulent concealment and civil conspiracy claims on the additional grounds that North Carolina does not recognize a cause of action for fraudulent concealment "except in cases involving fiduciary, contractual or similar relationships not applicable here" and that the dismissal of the fraud claim rendered moot the civil conspiracy claim.
 
 
 6
 In granting the defendants' motion for summary judgment on the admiralty claims, the court concluded that Burnette could not meet the jurisdictional test under 28 U.S.C.A. Sec. 1333(1) for either tort-based or contract-based claims.[4] In particular, as to the tort claims, the lower court determined that the plaintiff could establish neither that his injuries occurred in a maritime situs nor that the defendants' alleged tortious conduct bore a significant relationship to traditional maritime navigation and commerce. Executive Jet Aviation v. Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). As to the contract-based breach of implied warranty claim, the court reasoned that Burnette could not establish the existence of such warranty implied in a maritime contract.
 
 
 7
 Burnette's appeals from the district court's grant of these summary judgment motions were consolidated for review here.
 
 II
 
 8
 We turn first to the question of diversity jurisdiction and the applicability of Sec. 1-50(6) to disease claims. In an appeal presenting the issue of whether Sec. 1-50(6) applies to an asbestos-related disease claim, Hyer v. Pittsburgh Corning Corp., 790 F.2d 30 (4th Cir.1986), we held that Sec. 1-50(6), insofar as it constitutes a statute of repose, has no application to claims arising out of disease. See also Silver v. Johns-Manville Corp., 789 F.2d 1078 (4th Cir.1986) (Sec. 1-50(6) does not bar action for wrongful death resulting from exposure to asbestos products). This holding was based upon our understanding of the North Carolina Supreme Court's opinion in Wilder v. Amatex Corp., 314 N.C. 550, 336 S.E.2d 66 (1985). Accordingly, for the reasons set forth in Hyer, we are constrained to hold that on the facts as presented here, Sec. 1-50(6) does not bar Burnette's claims brought pursuant to diversity jurisdiction.
 
 III
 
 9
 We affirm, however, the lower court's dismissal of two of Burnette's diversity claims for fraudulent concealment and civil conspiracy. Burnette premises his claim of fraudulent concealment upon the defendants' non-disclosure or failure to warn of material facts concerning the hazards of exposure to asbestos-containing products. The lower court found that North Carolina has never recognized a cause of action for fraudulent concealment in the absence of a relationship of trust or confidence created by a fiduciary, contractual or other similar relationship which imposes upon the defendant a "duty to speak" to the plaintiff. See, e.g., Vail v. Vail, 233 N.C. 109, 63 S.E.2d 202 (1951) (mother and son relationship). We see no error in the court's conclusion that North Carolina would not recognize a relationship of trust or confidence in the context advocated by Burnette.[5] See Stone v. McClam, 42 N.C.App. 393, 257 S.E.2d 78 (1979).
 
 
 10
 Likewise, we find no error in the district court's determination that dismissal of Burnette's fraudulent conspiracy claim made moot his claim for civil conspiracy to commit those acts of concealment. In the absence of a claim for fraudulent concealment, Burnette has no basis upon which to show any wrongful act on the part of the defendants. See Henry v. Deen, 310 N.C. 75, 310 S.E.2d 326 (1984). Accordingly, we affirm the court's grant of summary judgment in favor of the defendants on the claims of fraudulent concealment and civil conspiracy.
 
 IV
 
 11
 We also affirm the lower court's grant of summary judgment on Burnette's claims brought pursuant to admiralty jurisdiction. We do so, however, on a different basis. Since the lower court's decision, this court has reconsidered en banc White v. Johns-Manville Corp., 662 F.2d 234 (4th Cir.1981) (White II). In Oman v. Johns-Manville Corp., 764 F.2d 224 (4th Cir.1985) (en banc), this court overruled White II, adopted a four-part nexus test and held, under the nexus test, that the federal courts may not exercise admiralty jurisdiction over damage claims by land-based ship repair or construction workers for employment-related, asbestos-induced disease.[6] Accordingly, for the reasons set forth in Oman, we are constrained to hold on these facts that the lower court properly refused to exercise admiralty jurisdiction over Burnette's claims.
 
 
 12
 Accordingly, we reverse and remand for further proceedings as to the claims brought pursuant to diversity jurisdiction except as to the claims of fraudulent concealment and civil conspiracy for which we affirm the grant of summary judgment. We affirm as to the lack of admiralty jurisdiction.
 
 
 13
 REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
 
 
 
 [1]
 This court granted a joint motion for dismissal of Raymark Industries, Inc. on June 25, 1986
 
 
 [2]
 N.C. Gen.Stat. Sec. 1-50(6) provides that:
 No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.
 
 
 [3]
 The lower court also rejected Burnette's constitutional challenge to the statute as well as his claim that the statute should be limited to the plaintiff's exposure to asbestos-containing products within North Carolina. Because we reverse and remand on the question of the applicability of N.C. Gen.Stat. Sec. 1-50(6) to diseases, we need not reach these issues
 
 
 [4]
 Burnette concedes that the court properly found that jurisdiction cannot be premised upon the Admiralty Jurisdiction Extension Act, 46 U.S.C.A. Sec. 740, et seq
 The plaintiff also does not contest the district court's dismissal as to the admiralty claims of all but five defendants. The court granted summary judgment in favor of thirteen defendants on the basis of Burnette's concession that he could not meet a condition precedent to the exercise of admiralty jurisdiction under Sec. 1333(1)--a showing of exposure to a specific asbestos-containing product of a particular defendant. Accordingly, we address only the question of the propriety of the grant of summary judgment in favor of the five remaining defendants: Johns-Manville, Philip Carey, Forty-Eight Insulation, Inc., Amatex Corporation, and Carey-Canada, Inc.
 
 
 [5]
 The lower court's dismissal of the fraudulent concealment and civil conspiracy claims was also grounded upon the preclusive effect of Sec. 1-50(6). Because we held, in accordance with Hyer, that Sec. 1-50(6) does not apply to diseases, this basis for summary judgment is no longer good law. In affirming the district court, we rely instead upon the additional bases stated by the district court supporting a grant of summary judgment on these two diversity claims
 
 
 [6]
 The nexus test consists of four factors to be considered by the court in analyzing the relationship a particular claim bears to traditional maritime activity: "(1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and the type of injury; and (4) traditional concepts of the role of admiralty law." 764 F.2d at 230. The Oman court concluded that the asbestos plaintiffs' claims were not cognizable in admiralty because their claims did not bear a significant relationship to traditional maritime activity under the four-part nexus test. Oman is in conformity with other circuits which have considered this issue and rejected the exercise of admiralty jurisdiction in the context of asbestos claims. See, e.g., Myhran v. Johns-Manville Corp., 741 F.2d 1119 (9th Cir.1984); Harville v. Johns-Manville Products Corp., 731 F.2d 775 (11th Cir.1984); Lowe v. Ingalls Shipbuilding, 723 F.2d 1173 (5th Cir.1984)