**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SANDRA D. BULLARD,
<u>Plaintiff-Appellant,</u>

and

ARTHUR L. BULLARD,
<u>Plaintiff,</u>

v.

DALKON SHIELD CLAIMANTS TRUST,
<u>Defendant-Appellee,</u>

                         No. 94-1364

and

FREDERICK A. CLARK, JR., M.D.;
HUGH J. DAVIS, JR., M.D.; A. H.
ROBINS COMPANY,
<u>Defendants.</u>

NORTH CAROLINA ACADEMY OF TRIAL
LAWYERS,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CA-92-882-B)

Argued: November 2, 1994

Decided: February 2, 1996

Before RUSSELL and WIDENER, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Widener wrote the opinion, in which Judge Russell and Senior Judge Chapman joined.

_____

**COUNSEL**

**ARGUED:** Ralph James Lore, LORE & MCCLEAREN, Raleigh, North Carolina, for Appellant. Richard Matthew Barnes, GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Charles P. Goodell, Jr., Richard L. Ames-Ledbetter, GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Maryland, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

The plaintiff, Mrs. Bullard, appeals the order of the district court granting summary judgment for the defendant, the Dalkon Shield Claimants Trust, on the finding that her personal injury claim is untimely under the North Carolina statute of repose, N.C. Gen. Stat. § 1-50(6). The question before this court is whether, under North Carolina law, the disease exception to the statute encompasses the plaintiff's claim of pelvic inflammatory disease.[1] We conclude that the North Carolina Supreme Court would find that pelvic inflammatory disease is a disease and that that statute of repose does not apply to bar the plaintiff's claim. The order of the district court is vacated and the case is remanded for further proceedings.

I

On January 11, 1972 Mrs. Bullard underwent insertion of a Dalkon Shield intrauterine device (IUD) by her local physician in North Caro-

_____

[1] Pelvic inflammatory disease is referred to throughout this opinion. Those references include all the ills associated therewith, including infertility.

2

lina. On June 28, 1973, the device was found to be imbedded in her uterus, but was not removed at that time. In April 1974 Mrs. Bullard was treated for pelvic inflammatory disease and uncontrolled bleeding, and she was admitted to the hospital for surgical removal of the IUD. Over three years later, on August 29, 1977, Mrs. Bullard underwent an exploratory laparotomy for persistent lower abdominal pain and abnormal spotting between menstrual periods. She was diagnosed at that time to have adhesions of the fallopian tube and ovary caused by old chronic pelvic inflammatory disease and an ectopic pregnancy which required a right salpingectomy (removal of the right fallopian tube). Mrs. Bullard has been unable to conceive since that time.

Mrs. Bullard asserts, and the Trust concedes (A. 78), that she did not discover the possible connection between her use of the IUD and her injuries until December 1984 when she read an advertisement in the newspaper for legal services related to injuries from the Dalkon Shield. On May 2, 1985, she filed suit in a Maryland state court against the manufacturer, A.H. Robins Company, Hugh J. Davis, M.D., the inventor, and others for damages for infertility secondary to pelvic inflammatory disease. Mrs. Bullard's theories of recovery were negligence, strict liability, fraudulent misrepresentation, and conspiracy to commit fraud. Thereafter, in the course of bankruptcy proceedings by A.H. Robins Company, the Dalkon Shield Claimants Trust (Trust) was created and substituted for all named defendants. Subsequently, the action was removed on motion by the Trust to the United States District Court for the District of Maryland. Sitting in diversity, the district court determined that Maryland applies the rule of lex loci delicti for tort actions. It found that neither party disputed that the IUD at issue was inserted in North Carolina and that all injuries claimed by the plaintiff occurred in North Carolina. The district court then determined that N.C. Gen. Stat. § 1-50(6), a substantive statute of repose,[2] barred the claims. In an opinion and order entered February 16, 1994, the district court granted summary judgment in favor of the Trust. Bullard v. Dalkon Shield Claimants Trust, 845 F. Supp. 328 (D. Md. 1994). This appeal followed.

_____

[2] See Bolick v. American Barmag Corp., 293 S.E.2d 415 (N.C. 1982).

3

II

Mrs. Bullard contends that the district court erred in determining that N.C. Gen. Stat. § 1-50(6) applied as a substantive bar to her claim because her injuries are within a disease exception to the statute.**3** The Trust's position, and that adopted by the district court, is that the substantive N.C. Gen. Stat. § 1-50(6) applies to this product-related claim, except for a narrow exception which they argue applies to only "occupational diseases that share the attributes of long manifestation periods and difficulty in determining the time of exposure". 845 F. Supp. at 334. We review the district court's grant of summary judgment in favor of the Trust de novo, with the facts considered in the light most favorable to the non-moving party, Mrs. Bullard. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

A

In deciding the question of application of N.C. Gen. Stat. § 1-50(6) or N.C. Gen. Stat. § 1-15(b) (repealed and replaced by § 1-50(6) (effective October 1, 1979) to pelvic inflammatory disease, we look to relevant interpretations by the North Carolina Supreme Court. Hyer v. Pittsburg Corning Corp., 790 F.2d 30 (4th Cir. 1986). Both parties rely on Wilder v. Amatex Corp., 336 S.E.2d 66 (N.C. 1985), a case decided under § 1-15(b).**4**Wilder involved a plaintiff who was exposed to asbestos in his job of installing insulation from 1939 to 1979. Although Wilder experienced some shortness of breath beginning in the late 1960's, he was not diagnosed to have asbestosis until 1979. He filed his complaint for damages against several manufacturers of insulation containing asbestos in 1981 in a state court. The trial court granted the manufacturers' motions for summary judgment

_____

**3** N.C. Gen. Stat. § 1-50(6) states:

> No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

**4** The exception to N.C. Gen. Stat.§ 1-15(b) recognized in Wilder applies equally to N.C. Gen. Stat. § 1-50(6). Hyer v. Pittsburgh Corning Corp., 790 F.2d 30, 33-34 (4th Cir. 1986).

based on a finding that N.C. Gen. Stat. § 1-15(b) barred the claim. The North Carolina Supreme Court reversed, concluding that that statute of repose did not apply to claims arising from disease. 336 S.E.2d at 67, 73.

In determining the application of § 1-15(b) to asbestosis claims, the court reviewed the long-established rule of law in North Carolina that a claim accrues when the injury to the claimant first occurs, rather than when the claimant discovers the injury. The court then determined that the purpose of the statute at issue was to enlarge, not restrict, the time within which an action could be brought, subject to an outer limitation period of ten years from the last act of the defendant. After reviewing the plain language and intent of N.C. Gen. Stat. § 1-15(b), the Wilder court found that the legislature never intended the statute to apply to claims arising out of a disease:

> The legislature . . . was reacting to the law of Jewell, Motor Lines, Shearin, and Lewis which permitted latent, undiscovered, first injury to cause the statute of limitations to begin running. In a disease claim, as we have demonstrated, the diagnosed disease is the first injury. A manifested, diagnosed disease is not latent. There was, therefore, no need for a statute changing the accrual date for disease claims, and the statute by its terms does not purport to do so. The only need was for a statute changing the accrual date for latent injury claims such as those in Jewell, Motor Lines, Shearin and Lewis, and the statute by its terms is directed to these type claims.

336 S.E.2d 73. Emphasizing its earlier discussion in Raftery v. Construction Co., 230 S.E.2d 405 (N.C. 1976), concerning the kinds of cases subject to the outer limitation, the Wilder court determined that "[n]one of the cases toward which the statute was directed involved disease. They all involved situations in which it was possible to identify a single point in time when plaintiff was first injured."[5] 336

_____

[5] **Shearin v. Lloyd**, 98 S.E.2d 508 (N.C. 1957), was a malpractice action in which the court held that the cause of action began to accrue for purposes of the statute of limitations at the time of the negligent act, when

S.E.2d at 70. The Wilder court recognized that "[b]oth the Court and the legislature have long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods." 336 S.E.2d at 71.

We are of opinion that the district court erred in holding that the Wilder exception is limited to a narrow range of occupational diseases or only to those diseases affirmatively stated as exceptions in a case such as Wilder. While Wilder does involve a disease contracted from occupational exposure to asbestos, we find nothing in the language of Wilder that would limit the disease exception. Rather, in its discussion throughout and at the conclusion, the Wilder court states repeatedly and without qualification or equivocation that the statute does not apply to claims arising from disease.

We find nothing in Wilder that suggests that the North Carolina Supreme Court would determine whether pelvic inflammatory disease were included in the disease exception to the statute of repose based on its status or lack of status as an occupational disease. And we note that the North Carolina Supreme Court has stated unequivocally that the statute has "no application to claims arising from disease." 336 S.E.2d at 67, 73.**6**

_____

a sponge was left in the plaintiff's body at surgery, even though the plaintiff was not aware of the sponge. Likewise, in Lewis v. Shaver, 73 S.E.2d 320 (N.C. 1952), the negligent act occurred at the time of the distinct act of unauthorized tying of the plaintiff's fallopian tubes, even though the plaintiff did not discover the damage until much later. Motor Lines v. General Motors Corp., 128 S.E.2d 413 (N.C. 1962), and Jewell v. Price, 142 S.E.2d 1 (N.C. 1965), were claims in which the court held that the injury occurred and the claim accrued at the time of the original tortious act, when the latently defective product was sold and delivered, not when the actual injury occurred some time later.

**6** This result is consistent with our previous holdings regarding this same statute of repose. See Hyer v. Pittsburgh Corning Corp., 790 F.2d 30 (4th Cir. 1986), where we concluded on the same reasoning that the statute did not apply to the plaintiff's asbestos-related claim. See also Burnette v. Nicolet, Inc., 818 F.2d 1098 (4th Cir. 1986); Guy v. E.I.

B

Turning to the question of whether pelvic inflammatory disease is a disease within the meaning of the disease exception to the statute, we find no North Carolina decision. But we think the analysis of the North Carolina Supreme Court in Wilder is instructive:

> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first identifiable injury occurs when the disease is diagnosed as such, and at that time it is no longer latent.

336 S.E.2d at 70.

It is clear in Wilder that in determining a disease exception to the statute, the court looks primarily to two characteristics: the difficulty or impossibility of establishing the exact time the injury first occurs or the disease process begins, and some period of time between first exposure to the product and the discovery of the disease, so that the harm caused by the product would not be readily apparent until the disease is diagnosed as such. We do not agree with the district court's reasoning that the disease exception recognized in Wilder "appl[ies] solely to occupational disease." Indeed Wilder specifically states the statute in question was enacted as a part of a statute to change the accrual date for latent injury claims such as those in Jewell, Motor Lines, Shearin and Lewis, 336 S.E. 2d at 70, 73, none of which cases

_____

Dupont de Nemours & Co., 792 F.2d 457 (4th Cir. 1986) (chronic obstructive lung disease resulting from exposure to diisocynate); Silver v. Johns-Manville Corp., 789 F.2d 1078 (4th Cir. 1986). While these cases involved asbestosis or chronic lung disease specifically mentioned by the Wilder court, none of the cases limited the Wilder language or holding to an occupational disease.

7

concerned an occupational disease. While it is true that certain occupational diseases fall within the Wilder exception, it is not true that the disease exception to the statute of repose recognized in Wilder is confined solely to occupational diseases.

As might be supposed, there is precious little authority on this narrow question. That which has come to our attention, however, arises from two States in the Seventh Circuit and from that court. The cases are Hansen v. A. H. Robins Co., Inc., 335 N.W.2d 578 (Wis. 1983); Hansen v. A. H. Robins Co., Inc., 715 F.2d 1265 (7th Cir. 1983); Barnes v. A. H. Robins Co., Inc., 476 N.E.2d 84 (Ind. 1985); Covalt v. Carey Canada, Inc., 543 N.E.2d 382 (Ind. 1989); and Avery v. Mapco Products, Inc., 18 F.3d 448 (7th Cir. 1994).

The Hansen cases involve application of the Wisconsin statute of limitations to an action resulting in pelvic inflammatory disease from the insertion of a Dalkon Shield, facts not different in any significant way from those of the case at hand. The district court in Wisconsin had held the Wisconsin statute of limitations had run. On appeal, that question, however, was referred by the Seventh Circuit to the Supreme Court of Wisconsin for a decision "that directly addressed when the statute of limitations begins to run in a disease situation." 715 F.2d at 1266. The question itself was quoted by the Wisconsin Court and contained a description of the injury of the plaintiff as "caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." 335 N.W.2d at 579. So the Seventh Circuit described pelvic inflammatory disease as a disease, and the Wisconsin Court answered the question by reference to a disease. The Wisconsin Court answered that the discovery rule applied when the negligence charged might cause an injury which is initially latent. 335 N.W.2d at 580. Specifically, the Court held that the claim should "accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." 335 N.W.2d at 583. The significance of those cases, of course, is that pelvic inflammatory disease caused by the insertion of a Dalkon Shield was held to be a disease. In neither Hansen case was a statute of repose, as distinguished from a statute of limitation, involved.

The Barnes case arose in the state court in Indiana in the same manner as had the Hanson case in Wisconsin, on a certified question

8

from the Seventh Circuit. It also involved a suit against Robins involving pelvic inflammatory disease resulting from the insertion of a Dalkon Shield. A part of the question certified from the Seventh Circuit was predicated on "when the injury to the plaintiff is caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." 476 N.E.2d at 85. The Indiana Court answered the question that in such a case, a discovery type rule should be applied much the same as had the Court in Wisconsin. 476 N.E.2d at 87. The significant thing about Barnes is that both the Seventh Circuit and Indiana Court decided the case on the basis that pelvic inflammatory disease is a disease, and, as the Hansen cases had not, Barnes did not consider the application of a statute of repose as distinguished from a statute of limitations. Barnes, however, was followed by Covalt. Covalt was another case by way of reference from the Seventh Circuit and presented "a circumstance where a worker is diagnosed as having asbestosis more than ten (10) years after his last exposure to asbestos in the workplace. The cause is not a workers compensation action, but rather a product liability action against those who are alleged to have supplied asbestos to the employer." Indiana had a ten year statute of repose keyed to bringing the action "within ten (10) years after the delivery of the product to the initial user or customer." 543 N.E.2d at 383. The question certified by the Seventh Circuit was whether suit might be brought "within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease." 543 N.E.2d at 384. The Indiana Court answered the question in the affirmative: that the plaintiff could bring suit within two years after discovering the disease and its cause, although the discovery was made more than ten years after the last exposure to the product. Not only is this holding of significance, but the reasoning is particularly apt. The Court stated that:

> This [answer] is consistent with our holding in Barnes and is limited to cases, such as this one, where an injury to a plaintiff is caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance. 543 N.E.2d at 384.

* * * *

9

As was the situation in Barnes this case involves a latent disease which may have been contracted as a result of the introduction of a foreign substance into a person's body. In Barnes that foreign substance was the Dalkon shield intra-uterine device manufactured by A.H. Robins, Co., Inc. In the present case, the foreign substance is asbestos, a naturally occurring substance that the defendants allegedly mined and supplied to the plaintiff's employer in raw, chrysotile, fibrous form. In both cases, the foreign substance was introduced into the plaintiff's body long before any injury or resultant disease became manifest. Although it is true that the plaintiff's cause of action did not accrue for purposes of the two (2) year statute of limitations . . . until such time that the plaintiff knew or should have discovered that he suffered an injury or impingement, the fact remains that the injury was inflicted, during the time of protracted exposure to an inherently dangerous foreign substance. 543 N.E.2d at 384.

The significance of the Covalt case, of course, is that the Indiana Court, in holding that asbestosis was subject to a discovery rule, and that a statute of limitation applied rather than a statute of repose, equated asbestosis to pelvic inflammatory disease from the use of a Dalkon Shield in arriving at its conclusion. The Covalt case is not different in any significant particular from the case at hand, and no case coming to a contrary conclusion has come to our attention. Finally, in Avery v. Mapco Gas Products, Inc., 18 F.3d 448, 454, the Seventh Circuit construed Covalt and Barnes as we have to this effect: " . . . The Indiana Supreme Court has concluded that injuries attributed to intrauterine devices and asbestos are not subject to the statute of repose." Consistent with the literal language of the Wilder case, we find those cases from the Seventh Circuit, Indiana and Wisconsin to be persuasive.

We are thus of opinion that Mrs. Bullard's pelvic inflammatory disease is within the disease exception recognized in Wilder and that the North Carolina statute of repose, N.C. Gen. Stat. § 1-50(6), does not apply in this case. We express no opinion as to whether or not any other limitation of action may apply. The judgment of the district

10

court must be vacated and the case remanded for further proceedings not inconsistent with this opinion.**7**

VACATED AND REMANDED

_____

**7** There is no dispute but that Mrs. Bullard's pelvic inflammatory disease fits within the <u>Wilder</u> definition as one which normally develops over a long period of time after exposure to an offending substance.

11