**Cleremont L. COVALT and Ahnighita M. Covalt, Plaintiffs–Appellees,**

v.

**CAREY CANADA, INC. and Union Carbide Corporation, Defendants–Appellants.**

No. 98 S00–8811–CQ–922.

Supreme Court of Indiana.

Sept. 8, 1989.

As Amended Sept. 21, 1989.

Michael A. Bergin, Julia M. Blackwell, Karl M. Koons, III, Locke, Reynolds, Boyd & Weisell, Indianapolis, for defendants-appellants.

Stephen L. Williams, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, Timothy E. Eble, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, S.C., for plaintiffs-appellees.

Indiana Trial Lawyers Ass'n Corp., Peter D. Shumacker, Thomas J. Young, Thomas J. Young & Associates, Indianapolis, Local Union No. 20 of the Sheet Metal Workers Intern. Ass'n, et al., Barbara J. Baird, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, for amicus curiae.

PIVARNIK, Justice.

This cause comes to us on a certification of a question of state law from the United States Seventh Circuit Court of Appeals. This Court has jurisdiction to answer said certified question pursuant to Ind.R.App.P. 15(O). The cause now before the Seventh Circuit, on appeal from the District Court for the Southern District of Indiana, presents a circumstance where a worker is diagnosed as having asbestosis more than ten (10) years after his last exposure to asbestos in his workplace. The cause is not a worker's compensation action, but rather, a products liability action against those who are alleged to have supplied asbestos to the employer.

Cleremont Covalt worked with asbestos at Proko Industries in Indiana between 1963 and 1971. He believes that Carey Canada, Inc., a subsidiary of Celotex Corp., and Union Carbide Corp. furnished Proko with raw asbestos without properly warning either Proko or him of its dangers. In 1986, physicians concluded that Covalt had asbestosis and lung cancer. He and his wife commenced this action for personal injuries and loss of consortium promptly in the United States District Court against Carey Canada, Inc. and Union Carbide Corp. Defendants filed motions for summary judgment asserting Ind.Code § 33-1-1.5-5, the ten (10) year statute of repose in the Indiana Products Liability Act, which provides, in pertinent part, as follows:

> any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer; ....[1]

---

1. While not determinative of the outcome in this case, it should be noted that the Indiana Legislature has amended Ind.Code § 33-1-1.5-5 while the certified question presented herein was pending before this Court. Ind.Code

§ 33-1-1.5-5 now expressly provides an exception to its limitations and repose periods for asbestos-related actions. This exception is delineated in Ind.Code § 33-1-1.5-5.5 (effective July 1, 1989), which provides in pertinent part

District Judge McKinney overruled Defendants' motions because of this Court's decision in *Barnes v. A.H. Robins Co.* (1985), Ind., 476 N.E.2d 84. Applying *Barnes,* he determined that the accrual of a cause of action should be determined by a discovery rule in cases of protracted exposure to hazardous substances. *Covalt v. Carey–Canada, Inc.* (S.D.Ind.1987), 672 F.Supp. 367, 368. Defendants filed an interlocutory appeal, and the Seventh Circuit Court of Appeals found that the question of whether this action is barred by the statute is controlled by the law of the State of Indiana, and further found there were no clear controlling precedents in the decisions of the Supreme Court of Indiana to answer the precise question presented. Therefore, the Seventh Circuit found this to be an appropriate question to be certified to this Court pursuant to Ind.R.App.P. 15(O).

The Seventh Circuit Court of Appeals accordingly certified the following question to this Court:

> Whether a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease.

We now answer this certified question in the affirmative and find that a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease. This is consistent with our holding in *Barnes* and is limited to cases, such as this one, where an injury to a plaintiff is caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance.

Initially, it should be noted that in *Barnes,* this Court referred to other statutes for guidance in determining legislative intent. Specifically, we noted that the Legislature recognized the need for a discovery type of remedy in the case of exposure to

radiation in the Occupational Diseases Act, Ind.Code § 22–3–7–9(f)(2). We noted in *Barnes* that although the Legislature did not apply a discovery rule to other substances, in the case of a tort of the nature contemplated by the certified question presented in *Barnes,* the Legislature provided for action to be brought within two years after the cause accrues, leaving the courts to determine when the cause accrues. *Barnes,* 476 N.E.2d at 86–87. In the instant action, Defendants concede that in cases of disease, a plaintiff's cause of action accrues on the date he discovered or should have discovered the alleged injury and that the injury was caused by the defendant's products. (Defendants–Appellants' Brief at 12–13).

As was the situation in *Barnes,* this case involves a latent disease which may have been contracted as a result of the introduction of a foreign substance into a person's body. In *Barnes,* that foreign substance was the Dalkon shield intrauterine device manufactured by A.H. Robins Co., Inc. In the present case, the foreign substance is asbestos, a naturally occurring substance that the defendants allegedly mined and supplied to the plaintiff's employer in raw, chrysotile, fibrous form. In both cases, the foreign substance was introduced into the plaintiff's body long before any injury or resultant disease became manifest. Although it is true that the plaintiff's cause of action did not accrue for purposes of the two (2) year statute of limitations set forth in Ind.Code § 33–1–1.5–5 until such time that the plaintiff knew or should have discovered that he suffered an injury or impingement, the fact remains that the injury was inflicted, and continued to be inflicted, during the time of protracted exposure to an inherently dangerous foreign substance.

Like Judge McKinney, this Court is not unmindful of the fact that in *Barnes* the plaintiffs discovered their diseases within ten years of the initial introduction of the Dalkon shield intrauterine device into their bodies, whereas in the present case, the discovery did not take place until more

---

that an asbestos-related action must be brought within two (2) years of the date when the in-

jured person knows that he has an asbestos-related disease or injury.

than ten years after Covalt's last exposure to asbestos. Nonetheless, if a disease is the result of protracted exposure to a foreign substance, then the injury is not only ongoing and continuous in nature, but becomes compounded as time passes. By definition, the injury begins from the moment the foreign substance is introduced into the body, even if the resultant disease does not manifest itself until many years later. This was made clear in *Barnes*, where this Court recognized the problem as follows:

> The problem comes about when the act, seemingly innocent, causes changes so subtle and latent that they are not discoverable to the plaintiff until they manifest themselves many years later.

*Barnes*, 476 N.E.2d at 86. Accordingly, where the seeds of injury and latent disease are introduced into the body as a result of protracted exposure to a foreign substance, a plaintiff's cause of action cannot be barred by the ten year statute of repose, no matter when the plaintiff knew or should have discovered the resultant disease.

In *Berns Constr. Co. v. Miller* (1987), Ind., 516 N.E.2d 1053, *aff'g* (1986), Ind.App., 491 N.E.2d 565, this Court summarily affirmed a decision handed down by the First District Court of Appeals in a case involving statutes of limitation and repose in a personal injury action arising out of injuries sustained on a construction site. At issue in *Berns* was whether Ind.Code § 34–1–2–2(1), a two year statute of limitation for injuries to person, character or personal property, was supplanted by Ind.Code § 34–4–20–2, which requires actions to recover damages against contractors and architects to be filed within ten years from the date of substantial completion of the improvement to real property. In discussing both the substantive and procedural qualities of statutes of repose, the Court of Appeals noted the following:

> The statute [of repose] acquires its substantive quality by potentially barring a right of action before the injury has occurred *if the injury occurs subsequent to the prescribed time period.* On the other hand, the statute operates as an ordinary statute of limitation as to events occurring before the expiration of the prescribed time period.

*Berns*, 491 N.E.2d at 570 (emphasis added).

In cases such as this one, which involve an inherently dangerous and toxic foreign substance being visited into the body over a protracted period of time, there is no reason to distinguish whether the injury occurs "subsequent to the proscribed time period" or before. Inherently dangerous substances like raw asbestos fiber will not become any safer with time. Even assuming, *arguendo*, that asbestos could be made safer by some process or procedure yet unknown, that process or procedure must necessarily begin with raw asbestos. An inherently dangerous substance like the raw, chrysotile, fibrous asbestos that Cleremont Covalt was exposed to in this case is just as hazardous when it is first introduced into the market as it is ten (10) or even fifty (50) years later. Accordingly, since one can be injured from prolonged exposure to newly milled and manufactured asbestos just as readily as asbestos which has been on the market for ten (10) years or more, no purpose is served in legally distinguishing the two. *Cf. Knox v. AC & S, Inc.* (S.D.Ind.1988), 690 F.Supp. 752.

Consequently, it does not matter whether Covalt's injury was the result of protracted exposure to newly manufactured asbestos or asbestos which was introduced into the market more than ten (10) years ago. We find our statute of repose inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body.

Of course, the two (2) year statute of limitations contained in Ind.Code § 33–1–1.5–5 still applies and the cause of action is deemed to accrue when Cleremont Covalt knew or should have discovered his injury or disease. Since the Covalts filed their complaint within two years of discovery in the instant case, there is no issue with regard to the two year limitations period.

Defendants urge that there are stark parallels between the present case and *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207. In *Dague*, this Court held that section five of the 1978 Product Liability Act barred Kathy Dague's wrongful death cause of action where her husband died as a result of injuries he sustained in an airplane crash which occurred more than ten years after the aircraft was first placed in the stream of commerce. *Dague*, 275 Ind. at 523, 526, 418 N.E.2d at 209, 211. Defendants argue that in *Dague*, as in the present case, the cause of action accrued more than ten years after the allegedly defective product was delivered to the initial user or consumer. In addition, Defendants maintain in both cases the alleged defect and damages were not "discovered" until more than ten years after the product was first placed in the stream of commerce. These arguments are unpersuasive for a number of reasons. First, *Dague* involved a one-time occurrence which resulted in immediate injury and death less than two months thereafter. *Dague*, 275 Ind. at 522, 418 N.E.2d at 209. Second, the *Dague* airplane crash occurred outside of the ten year statute of repose, whereas Cleremont Covalt's alleged injury and resultant disease is the result of protracted exposure to asbestos, an inherently dangerous product that was just as dangerous when first introduced into the market as it was when it was visited into his body for the very first time.

In *Barnes*, this Court recognized that *Dague* is readily distinguishable from cases involving inherently dangerous foreign substances that are visited into the body. We stated the following in discussing the rationale behind adopting a discovery rule:

Large numbers of new chemicals and products are being introduced into our economy and workplace that have resulted in a growing number of diseases and injuries that oftentimes do not manifest themselves until long after exposure ends. In some cases damage does not follow the negligent act of *introducing the product or drug into the body* for a period of years. In other cases the damage, in the form of progressive disease

or injury, is not apparent to the extent that it can be ascertained until long after the two year statute has run.

*Barnes*, 476 N.E.2d at 85 (emphasis added). The same rationale holds true today.

As Judge McKinney correctly points out, we are not concerned here with the introduction of a product into the marketplace. Here we are concerned with exposure to a hazardous foreign substance which causes disease. *Covalt v. Carey–Canada, Inc.* (S.D.Ind.1987), 672 F.Supp. 367, 368. In the present case, Defendants Carey Canada, Inc. and Union Carbide Corp. are alleged to have furnished Proko with raw asbestos, a naturally occurring substance which was mined by both Defendants herein. Whereas *Dague* dealt with product failure, the present case involves protracted exposure to a foreign substance which results in slow, progressive, undetectable injury and latent disease. We cannot say that the Legislature intended the ten year statute of repose to bar claims such as this one, where the injury is the result of protracted exposure to a hazardous foreign substance.

Finally, even a federal court that recently suggested a narrower reading of *Barnes* than we take today aptly pointed out the primary purpose of statutes of repose, that of recognizing the improvements of product design and safety that come with time, is not served in cases involving asbestos and its related diseases. *Knox v. AC & S, Inc.* (S.D.Ind.1988), 690 F.Supp. 752, 760 (citing *England v. Asbestos Corp. Ltd.*, No. IP 81–163–C (Feb. 13, 1987)). Asbestos and naturally occurring substances like it are not subject to design and safety improvements. The *Knox* court even went so far to say that asbestos will not and most probably cannot improve with time, will always be a dangerous product, and consequently, does not appear in any way to fall within the rationale of the rule. *Knox*, 690 F.Supp. at 760. On the other hand, Defendants maintain that regardless of whether asbestos can be made safer, the working conditions of raw asbestos handlers have improved over time. For example, employers now supply their workers with respira-

tors to decrease their likelihood of inhaling asbestos dust. From this, Defendants argue the policy behind the repose statute is, in fact, served in asbestos-related disease cases.

Whether the policy behind a repose statute is served in worker's occupational disease compensation actions is not at issue in this cause. While it is true that the Indiana Worker's Occupational Diseases Compensation Act specifically provides for limitations of actions against an employer for cases involving occupational diseases caused by the inhalation of asbestos dust, the present case is not a worker's compensation action. The Legislature did, in fact, set specific statutory limitations of action in occupational asbestos-related disease cases, and provided that no compensation shall be payable under the Worker's Compensation Act unless:

> disablement occurs three years after last exposure to the hazards of the disease if the last exposure was before July 1, 1985, [IC 22-3-7-9(f)(3)];
> disablement occurs twenty years after last exposure to the hazards of the disease if the last exposure was on or after July 1, 1985, and before July 1, 1988, [IC 22-3-7-9(f)(4)]; and
> disablement occurs thirty-five years after last exposure to the hazards of the disease if the last exposure was on or after July 1, 1988, [IC 22-3-7-9(f)(5)].

It may very well be that the Legislature contemplated improvements in the workplace over time when one's employees handle raw asbestos. But it is apparent from the statutes enumerated above that the Legislature also recognized the long latency period between exposure and manifestation in asbestos-related diseases.

This Court has held that when the Legislature has made its intentions clear as to a statutory period of limitations, we have been guided by those intentions and applied them in our determinations. *Barnes*, 476 N.E.2d at 86 (citing *Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8, *appeal dismissed* (1983), 460 U.S. 1076, 103 S.Ct. 1761, 76 L.Ed.2d 338; and *Dague, supra*). Moreover, the Legislature has the sole duty and responsibility to determine what constitutes a reasonable time for bringing an action, unless the period allowed is so manifestly insufficient that it represents denial of justice. Accordingly, because of the long latency period with asbestos-related diseases, most plaintiffs' claims would be barred even before they knew or reasonably could have known of their injury or disease and they would be denied their day in court if the ten year statute of repose were applied. To require a claimant to bring his action in a limited period in which, even with due diligence, he could not be aware that a cause of action exists would be inconsistent with our system of jurisprudence. *Barnes*, 476 N.E.2d at 86.

Accordingly, our holding today is limited to the precise factual pattern presented and does *not* apply to worker's occupational disease compensation actions. This opinion is accordingly limited to product liability actions in which the theory of liability is negligence or strict liability in tort. Ind. Code § 33-1-1.5-5.

Of course, we make no determination on the merits of the Covalts' causes of action against Carey Canada, Inc. and Union Carbide Corp. which are now before the Seventh Circuit Court of Appeals. The Covalts' causes of action are not barred by the ten year statute of repose set forth in Ind.Code § 33-1-1.5-5.

The certified question answered, this cause is remanded to the United States Court of Appeals for the Seventh Circuit for further proceedings.

DeBRULER and GIVAN, JJ., concur.

SHEPARD, C.J., and DICKSON, J., dissent with separate opinions.

SHEPARD, Chief Justice, dissenting.

If the past is indeed prologue, members of today's majority will spend the next few years explaining why victims of other defective products cannot seek damages even though victims of asbestos can.

The explanations may prove difficult. Today's opinion neither defines the boundaries of the exception it creates nor pro-

vides so much as a fig leaf justifying such judicial creativity.

By way of providing definitions, the majority tells us only that asbestosis victims are being allowed to seek recovery because they claim they were injured by a product that enters the body and takes a long time to cause harm[1], making it virtually impossible to predict which future product liability claimants will by luck of the draw find themselves the happy holders of a judicial exception to Indiana's statute of repose.[2]

We do know that the unlucky future claimants will include people like those injured in airplane crashes who claim defective manufacture or design of an aircraft that crashes thirteen years after delivery. The victims in such cases clearly could not know they would have a cause of action until after the statute of repose had run. Their advocates appeared in this Court eight years ago to argue strongly against the injustice of a statute which bars a claim forever even before it accrues. *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207 (Brief for Plaintiff–Appellant at 7–8). On that occasion, today's majority joined to say that the date of the accrual is of no moment. The courts are obligated, Justice Pivarnik said then, to accept the legislature's judgment that the action should be completely barred unless it is brought "within ten years after the product is first delivered to the initial user or consumer...." *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, 210.

Today, the majority distinguishes *Dague* on the grounds that it "dealt with product failure," by which I presume is meant a final structural or mechanical failure preceding the crash. Actually, the claims in *Dague* centered on aircraft design, but one is led to wonder how *Dague* would have turned out had the plaintiff been able to plead a slow deterioration of badly manufactured metal, deterioration leading ultimately to failure and crash. Would John Dague's widow have been barred had she been able to argue that her husband was the victim of a "slow, progressive, undetectable injury"? Apparently, she would have been told simply that defective asbestos is an exception to Indiana's statute of repose and defective metal is not.

The majority creates this exception by rewriting a statute which is a model of legislative clarity: "[A]ny product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer...." Ind.Code § 33–1–1.5–5. The majority claims to find some support for this rewriting in the Court's determination that the word "accrued" in the same statute should be construed as a discovery provision. *Barnes v. A.H. Robbins Co.* (1985), Ind., 476 N.E.2d 84. In defining a word left undefined by the legislature, however, a court acts within very traditional boundaries of statutory interpretation. With respect to the statute of repose, there is no need to put any English on the ball by interpreting an ambiguous word. The statute says that actions must be brought within ten years (or twelve) of delivery. One cannot legitimately say that such a simple action as we took in *Barnes* drives today's decision.

The best explanation I can find in the majority opinion of why it elects not to follow the legislature's direct command is that it "would be inconsistent with our system of jurisprudence." (Slip op. at 387). As Judge Easterbrook suggested in

---

1. The majority refers to asbestos as a "foreign substance," seeming to suggest that the statute of repose does not apply because asbestos is not a product for purposes of Ind.Code § 33–1–1.5–5. The legal basis for the plaintiffs' claims, however, is that asbestos *is* a product within the meaning of Ind.Code §§ 33–1–1.5–1 through 33–1–1.5–8. Whether the term "foreign substance" is intended to have a different legal meaning is unclear.

2. Will those who claim that use of saccharin contributed to cancer fit under this "foreign substance/long-term harm" rule? Will adults claiming injury from childhood exposure to lead paint fit under it? Will the rule apply to homeowners seeking to pursue radon claims notwithstanding the statute of repose contained in Ind.Code § 34–4–20–2?

certifying this question to us, accepting *those* grounds would lead to general abrogation of statutes of repose. *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1440 (7th Cir.1988).[3] If there is a principled basis for singling out one class of injured parties, victims of asbestosis, and shutting out all other defective product victims, I fail to discern it in the majority opinion.

Certainly, one could understand declining to enforce a statute on constitutional grounds, and statutes of repose generate frequent constitutional challenges. As for the federal constitution, of course, the Seventh Circuit has already rejected claims that Ind.Code § 33–1–1.5–5 violates the fourteenth amendment's due process and equal protection provisions. *Pitts v. Unarro Industries, Inc.*, 712 F.2d 276 (7th Cir. 1983). As for state constitutional claims, Justice Dickson correctly points out that the statute is still susceptible to challenges under Article 1, sections 12 and 23 of the Indiana Constitution and proposes that we undertake to review the constitutionality of the statute under these two sections. Although I customarily respond with alacrity to such proposals,[4] such a determination in this case would require raising and resolving a constitutional question in response to a simple question of statutory construction. The parties have not even cited section 23's privileges and immunities clause, and although plaintiffs do mention the open courts provisions of section 12, the statute's constitutionality is not squarely before us in this litigation.

Even if it were squarely put, I would be reluctant to make a constitutional declaration in answering a certified question, though I recognize that some supreme courts see little difficulty to doing so. *See, e.g., Lucas v. United States*, 757 S.W.2d 687 (Tex.1988). Courts ought to foreswear declaring on the constitutionality of stat-

utes unless circumstances demand no other response. While I would not shrink from addressing Indiana constitutional issues should parties choose to litigate these cases in Indiana's courts, addressing them on renvoi from Chicago strikes me as a little strange.

Judges determined to nullify statutes customarily feel constrained to ascribe their determination to neutral legal principles. Such constraint is not apparent today.

DICKSON, Justice, dissenting.

The majority avoids application of the ten-year statute of repose by declaring an exception for injuries resulting from "protracted exposure to an inherently dangerous foreign substance which is visited into the body." Such a judicial revision of Ind. Code § 33–1–1.5–5 is unacceptable.

Courts are not at liberty to construe a statute that is unambiguous. *Community Hosp. of Anderson and Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775; *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969; *Burks v. Bolerjack* (1981), Ind., 427 N.E.2d 887. The plain language of the products liability ten-year statute of repose is clear and free from ambiguity. It is therefore our duty to accept and apply the statute as written unless it exceeds the power of the legislature to act.

Even when statutory construction is undertaken, an appellate tribunal may not substitute its judgment for that of the legislature. *Johnson v. St. Vincent Hosp., Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585. The wisdom or desirability of a statute is not a proper matter for judicial evaluation. *Walton v. State* (1980), 272 Ind. 398, 398 N.E.2d 667.

---

3. There is a glimmer of justification in the majority's assertion that the "primary purpose" of statutes of repose is "recognizing the improvements of product design and safety." This treats as a throwaway line the complex legislative task of striking an economic balance that both protects individual consumers from defective products and provides encouragement for the introduction of new products. *See, e.g.,*

Epstein, *The Temporal Dimension in Tort Law,* 53 U.Chi.L.Rev. 1175 (1986); Markin, *A Statute of Repose for Product Liability Claims,* 50 Fordham L.Rev. 745 (1982).

4. *See* Shepard, "Second Wind for the Indiana Bill of Rights," 22 Ind.L.Rev. 575 (1989).

For these reasons, I am compelled to conclude that, absent constitutional infirmity, the ten-year statute of repose must be applied to product liability actions commenced more than ten years after delivery of the product to the initial user or consumer.

While I cannot agree with the majority's reasoning, I would favor that this Court undertake a review of the constitutional questions, particularly with respect to Art. 1, §§ 12 and 23 of the Constitution of Indiana.

Section 12. All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law....

Section 23. The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

Our recent decisions suggest that these issues remain unresolved. In *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, we held that the products liability statute of repose did not contravene Section 12. (*Dague* did not involve a Section 23 challenge.) However, language in contemporaneous and subsequent analogous decisions presents significant qualification or equivocation on the constitutional issues. In *Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8, 12, we stated that a "statute of limitations will comport with the constitutional demand for due process so long as it provides a reasonable time for the bringing of an action." Similarly, in *Short v. Texaco, Inc.* (1980), 273 Ind. 518, 525, 406 N.E.2d 625, 630, *aff'd* (1982), 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738, this Court declared Indiana to be in accord with the rule that statutes of limitation are not unconstitutional if reasonable time is given for the commencement of an action before the bar takes effect. Likewise, in *Rohrabaugh v. Wagoner* (1980), 274 Ind. 661, 664, 413 N.E.2d 891, 893, application of the two-year medical malpractice statute of limitations to certain minors was upheld against a constitutional challenge because "[t]he bar does not

fall until a reasonable time for filing has expired."

I would therefore favor that this Court engage in an analysis of the product liability statute of repose, not by way of statutory construction as undertaken by the majority, but rather by constitutional analysis so that we may review questions of its constitutionality under Art. 1, §§ 12 and 23 of the Constitution of Indiana, and so that we may reconsider and resolve the apparent inconsistencies between *Dague* and other recent analagous cases.