DICKSON, Justice.
We have consolidated three appeals involving the constitutionality of the Indiana Product Liability Act statute of repose. In each case, the plaintiffs request reconsideration of our prior holding in Allied-Signal v. Ott, 785 N,E.2d 1068 (Ind.2003). While we decline to reconsider Ott’s holdings due to the principles of stare decisis and legislative acquiescence, we do address the plaintiffs’ new constitutional claims not addressed in Ott and conclude ■ that the Product Liability Act’s statute of repose does not bar these plaintiffs’ claims.
The plaintiffs, Larry and Loa Myers and Raymond and Mary Geyman,[1] brought suit alleging damages stemming from asbestos-caused diseases. Larry Myers worked as an electrician from 1959 until his retirement in 1999. During that time he was exposed to asbestos from materials he was working with or from materials at various job sites. He was diagnosed in March 2014 with malignant pleural mesothelioma, “a form of cancer which sometimes develops many years after exposure to asbestos.” Appellants Myers’ App’x at 110. Raymond Geyman worked for an electric utility company from 1955 to 1970, and was exposed during that time to asbestos from products he worked on and around. He was diagnosed with mesothelioma in March 2007 and died in March 2008.
In their complaints, Larry and Loa Myers listed forty defendants, and Raymond and Mary Geyman listed twenty defendants. Several defendants in each case moved for summary judgment, leading to these appeals. The first two appeals, involving the Geymans,[2] are before us on interlocutory appeal from the trial court’s denial of the defendants’ motions for summary judgment. The third, involving the Myers, is an appeal[3] from'" the entry of summary judgment for the defendants as a final judgment. Each appeal presents essentially the same arguments, and the central issue in each is the trial court’s ruling on a motion for summary judgment asserting the ten-year statute of repose included in Indiana’s Product Liability Act. In all three cases, we granted a motion for transfer pursuant to Indiana Appellate Rule 56(A).
[1] These three appeals present the same principal issue: whether the plaintiffs’ claims are barred under Ott, 785 N.E.2d 1068, in which this Court interpret *1163 ed Sections 1 and 2 of the Indiana Product Liability Act’s Chapter 3.[4] Section 1 applies to product liability actions generally, while Section 2 applies .to “[a]sbestos-relat-ed actions.”[5] Ind.Code § 84-20-3-2. Ott held that Section 2 applies only to asbestos claims against defendants who both mined and sold raw asbestos, leaving “those who sell • asbestos-containing products .within the ambit of Section 1.” 785 N.E.2d at 1073, The plaintiffs now urge us to abandon that interpretation and follow the interpretation presented by the Ott dissent.[6] Appellee Geyman’s Br. at 27-37, Appellant Myers’ Br. at 28-33; Ott, 785 N.E.2d at 1078-80 (Dickson, J., dissenting). We de- ■ dine to alter Ott’s holdings with respect to statutory construction, finding it settled under our doctrines of stare decisis and legislative acquiescence.
Because the General Assembly is a coequal and independent branch of government, the doctrines of stare decisis and legislative acquiescence are especially com: pelling in matters of statutory interpretation. See Fraley v. Minger, 829 N.E.2d 476, 492 (Ind.2005); Layman v. State, 42 N.E.3d 972 (Ind.2015) (“both the doctrines of stare decisis as. well as legislative acquiescence counsel against overruling our existing precedent [interpreting Indiana’s *1164 felony murder statute]”). The twelve years since Ott has provided the General Assembly “considerable time” to change our interpretation in that case. Fraley, 829 N.E.2d at 492. “Certainly, had the General Assembly disapproved of our approach ... it could have done so. In the absence of such a change, we think it fair to infer a persuasive degree of legislative acquiescence with respect to our ap-proach_” Bailey v. State, 979 N.E.2d 133, 141 (Ind.2012). Because both stare deeisis and legislative acquiescence indicate “the strong probability that [we] have correctly interpreted the will of the legislature,” we will not reconsider Ott’s statutory interpretation holdings. Dunson v. Dunson, 769 N.E.2d 1120, 1125 (Ind.2002).[7]
[2] Separate from their challenges to Ott’s holdings regarding statutory construction, however, the plaintiffs argue that the statute of repose provisions, as explicated in Ott. violate two provisions of the Indiana Constitution: its Right to Remedy Clause, Article 1, Section 12, and its Equal Privileges and Immunities Clause, Article 1, Section 23. We first address the Equal Privileges and Immunities Clause challenge.
In Ott, this Court upheld Section 1 and Section 2 against an Article 1, Section 23 challenge, finding that the statutory distinction “between asbestos victims and other victims under the product liability act” did not harm asbestos victims because they are either subject to the same Section 1 statute of repose as non-asbestos victims, or have an exception under Section 2. 785 N.E.2d at 1077. Based on its finding that “asbestos plaintiffs do not suffer any cognizable harm” as compared to non-asbestos plaintiffs, the Ott court declined relief without addressing whether the disparate treatment constituted a constitutionally prohibited disparate privilege.
The present plaintiffs, however, bring a different Article 1, Section 23 claim. Instead of comparing asbestos victims to non-asbestos victims, they compare two separate types of asbestos victims. They argue that, given Ott’s statutory interpretation, Section 2 draws a constitutionally impermissible distinction between asbestos plaintiffs injured by defendants who both mined and sold raw asbestos and asbestos plaintiffs who were injured by defendants outside that category.[8] Appellants Myers’ Br. at 20-21; Appellee Geyman’s Br. in Gen. Elec. v. Geyman at 20; Appellee Geyman’s Br. in Owens-Illinois, Inc. v. Geyman at 20-21 (“Mrs. Geyman’s claims are barred on an arbitrary basis — her husband happened to be exposed to asbestos by a product manufacturer which did not also mine asbestos.”); Appellants Myers’ Reply Br. at 9-10 (comparing Mr. Myers to a hypothetical asbestos victim injured by a defendant who both mined and sold raw asbestos).
*1165 [3] The present plaintiffs’ claimed class distinction was not raised, and thus was not determined, in Ott. We consider it now because “[i]t is the claim ... that defines the class” in an Article 1, Section 23 challenge. Humphreys v. Clinic for Women, Inc., 796 N.E.2d 247, 254 (Ind.2003) (quoting McIntosh v. Melroe Co., 729 N.E.2d 972, 981 (Ind.2000)); accord Ott, 785 N.E.2d at 1077 (identifying the Article 1, Section 23 classes based on the “constitutional claim here, reduced to its essentials” (emphasis added)). In analyzing a Section 23 challenge, it is the disparate classification alleged by the challenger, not other classifications, that warrants review. This is true as long as the alleged classes have a sufficient basis in the challenged legislation. Sanquenetti v. State, 727 N.E.2d 437, 442 (Ind.2000) (“Contrary to the defendant’s assertion that the statute establishes a ‘legislative distinction between accessories and principals,’ ... the accomplice liability statute neither establishes separate classes nor accords disparate treatment to Indiana citizens or classes of citizens. Rather, the effect of the statute is just the opposite.”). See also Paul Stieler Enterprises, Inc. v. City of Evansville, 2 N.E.3d 1269, 1273 (Ind.2014) (“Under the facts of this case, both the language of the enactment and the parties identify essentially the same disparately treated classifications.”). The classifications identified by the plaintiffs have such a legislative basis. Section 2 is titled “Asbestos-related actions” and governs those actions brought by asbestos victims. Because it “applies only to product liability actions against ... persons who mined and sold commercial asbestos” the legislation is prescribing disparate treatment for asbestos victims injured by defendants who both mined and sold raw asbestos as compared to asbestos victims injured by other defendants. This statutory classification is the very one alleged by the plaintiffs here.
In Collins v. Day, this Court articulated the standard for determining whether a statute complies with Indiana’s Equal Privileges and Immunities Clause:
First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.
644 N.E.2d 72, 80 (Ind.1994). “Compliance with both elements is required to satisfy the constitutional requirement.” Paul Stieler, 2 N.E.3d at 1273.
Section 2 creates disparate treatment for the classes at issue here. Those asbestos victims who are injured by defendants who did not both mine and sell raw asbestos must sue those defendants under Section 1, where they may be barred by the statute of repose. The asbestos victims who are injured by defendants who did both mine and sell raw asbestos, however, may sue those defendants under Section 2, where no statute of repose applies. Because there is disparate treatment, Collins requires first that any disparate impact “be reasonably related to inherent characteristics which distinguish the unequally treated classes,” and second, that preferential treatment “be uniformly applicable and equally available to all persons similarly situated.” 644 N.E.2d at 80. Section 2 does not satisfy this burden.
Under the first element, “Collins requires that ... the disparate treatment must be reasonably related to the inherent differences that distinguish the unequally-treated classes.” Paul Stieler, 2 N.E.3d at 1275. In this case, no such characteristic exists. The disparately treated classes are identically comprised of asbestos victims, and Section 2 does not differentiate be *1166 tween them, based on any single characteristic of- theirs-inherent or otherwise; Whether asbestos victims are seeking relief from defendants who mined and sold raw asbestos or from defendants who provided products containing asbestos does not constitute an inherent distinguishing difference between the asbestos victims. Under both Collins and Paul Stieler, because the disparate treatment is not reasonably related to an inherent difference of the unequally treated classes, the statute violates Article 1, Section 23.
Furthermore, under the second element of the Collins' analysis,[9] any “preferential treatment must be uniformly applicable and equally available to all persons similarly situated.” Collins, 644 N.E.2d at 80. Here, the two classes of asbestos victims are similarly situated (both are victims of asbestos illness or disease), yet only ope of them (the class seeking damages from defendants who both mined and sold raw asbestos) is completely excepted from the statute of repose.. Virtually all class members suffer from asbestos-caused diseases with latency, periods of more than ten years. And, all class members were exposed to products containing asbestos. As plaintiffs Larry and Loa Myers point out:
[A] Jane Doe [who] was exposed to asbestos from a product manufactured by a company which also happened to mine asbestos — could ... bring and maintain [a] claim[ ] against the wrongful part[y] under Indiana Law. It is only because Larry Myers happens to have been injured by a product manufactured and sold by a particular sort of company (non-miners) that his claims are subject to a 10 year repose period.
Appellants Myers’ Reply Br. at 9-10. And amicus Indiana Trial Lawyers Association adds: “Both classes of asbestos victims are victims of similar injuries, and it is happenstance that some victims trace their injury to a tortfeasor that mined and sold asbestos while other victims trace their injury to a tortfeasor that sold asbestos-containing products.” Amicus Curiae Ind. Trial Lawyers Ass’n’s Br. at 12. Thus Section 2 “creates a preference, and establishes an inequality among a class of citizens all of whom are equally meritorious,” and therefore violates the second Collins factor. Collins, 644 N.E.2d at 79 (quoting Dixon v. Poe, 65 N.E. 518, 519, 159 Ind. 492, 497 (1902)).
[4] The unequal treatment under Section 2 separately offends both the first and second elements of the Collins analysis, violating the Equal Privileges and Immunities Clause of Article 1, Section 23 of the Indiana Constitution[10] on two separate and independent bases.
In crafting Section 2, the General Assembly expressly included a non-severability clause, overriding Indiana Code section 1-1-1-8,[11] which would otherwise apply *1167 when part of a statute is unconstitutional. The relevant Section 2 clause reads that “[f]or the purposes of IC 1 — 1—1—8, if any part of this section is held invalid, the entire section is void.” Ind.Code § 34-20-3-2(e). Because the plaintiff has established that Section 2, as construed by Ott, creates two disparately treated classifications in violation of the Indiana Constitution’s Equal Privileges and Immunities Clause, we must invalidate all of Section 2.
Because Section 2 no longer governs the plaintiffs in this case, their claims now all fall under the statute of repose provision in Section 1. This Court has addressed the statutory interpretation of Section l’s'statute of repose in two relevant cases: Ott and Covalt v. Carey Canada, Inc., Ott, 785 N.E.2d at 1077-78; Covalt, 543 N.E.2d 382 (Ind.1989).
[5] In Covalt, this Court interpreted Section 1 in response to a certified question from the United States Seventh Circuit Court of Appeals. . 543 N.E.2d at 383.[12] We held there that “a- plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery, was made more than ten years after the last exposure to the product that caused the disease.” Id. at 384. This holding was limited to cases, such as the ones here,, “where an injury to a plaintiff.is caused by a disease which may have beep contracted as a result of protracted exposure to. a foreign substance.” Id. As we explicitly held in Co-valt, “our statute of repose [is] inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body.” Id. at 385.
Covalt interpreted Section 1 standing alone, because Section 2 had not yet taken ■effect, but Ott- interpreted' Section 1 in light of Section 2; As Ott emphasized, “Co-valt was decided under prior law.” 785 N.E.2d at 1077. Ott’s partial overruling of Covalt was thus predicated on the intervening enactment and effective date of Section 2. Id. (noting that “[t]he adoption of Section 2 renders [Covalt’s ] analysis obsolete.”). But today, because we find that Section 2 is void due to its partial unconstitutionality, Covalt is restored as this Court’s controlling precedent. As a result, the Product Liability Act statute of repose does not apply to cases involving protracted exposure to an inherently dangerous foreign substance, in accordance with Covalt:
[6] -The relevant facts in these three appeals, as alleged by the plaintiffs, fall within our holding in Covalt. Raymond Geyman had worked for, an electric utility company as a powerhouse worker, laborer, and welder from 1955 to 1979, allegedly working with and around asbestos-containing components. He retired in 1979, was diagnosed with mesothelioma in March 2007, and died one year later. The Gey-mans filed their initial complaint in July 2007 and Mary Geyman now continues the litigation for herself and Raymond Gey-man’s . estate. Plaintiff Larry Myers worked as an electrician for forty years, from 1959 to 1999, and was exposed to asbestos fibers used, installed, or otherwise disturbed when he did his work. He was diagnosed with malignant pleural mesothelioma in March, 2014 and filed his action the followingi month. In its order denying summary judgment in General Electric v. Geyman, the trial court explained:
*1168 It takes many decades for a sufficient number of genetic mutations to occur in a mesothelial cell because of the body’s defense mechanisms that seek out and destroy defective cells (Ex. M2, Report of Dr. Arnold Brody, Ph.D., p. 356.) —
There are no visible signs or symptoms that would alert a person to the fact that they are on the path to an asbestos related disease.' Mesothelioma is a life threatening disease for which there is no cure.
It has been stated numerous times in prior testimony and medical journals, that it takes about 20 years for a person to be ill enough to be diagnosed with an asbestos related disease, like asbestosis, and as many as 50 years after exposure for mesothelioma to be diagnosed.
Appellant General Electric Company’s App’x at 67.
As in Covalt, the plaintiffs here allege injury caused by a disease that may have been “contracted as a result of protracted exposure to a foreign substance.” 543 N.E.2d at 384. Thus, as we held in Covalt the Indiana Product Liability Act’s statute of repose provision does not apply to bar these plaintiffs’ claims for asbestos injury and illness. Id. at 385. We affirm the denial of the summary judgment motions in General Electric Co. and Owens-Illinois, Inc. asserting the Product Liability Act statute of repose, and we reverse the summary judgment in Grouse-Hinds. Each of these cases are remanded to the trial court for further proceedings consistent with this opinion.
While we decline to reconsider our decision in AlliedSignal v. Ott, we find that Section 2 of the Product Liability Act violates the Indiana Constitution. Applying this Court’s precedent in Covalt v. Carey Canada, Inc., we uphold our prior decision that the Indiana Product Liability Act’s statute of repose does not apply to cases such as these where the plaintiffs have had protracted exposure to inherently dangerous foreign substances. We affirm the trial courts’ denial of summary judgment in General Electric Co. and Owens-Illinois, Inc., and we reverse the trial court’s grant of summary judgment in Crouse Hinds. We remand for further proceedings in accordance with this opinion.
RUCKER and DAVID, JJ., concur.
RUSH, C.J., dissents with separate opinion.
MASSA, J., dissents with separate opinion.

. Raymond Geyman died in March 2008, and his estate continues this litigation.

. These appeals, General Electric Company v. Geyman, and Owens-Illinois, Inc. v. Geyman, arise from the same lawsuit in Marion Superior Court, Cause No. 49D02-9801-MI-1-360.

. Myers v. Crouse-Hinds Div. of Cooper Indus., Inc., Marion Superior Court, Cause No. 49D02-1405-MI14372,

.Chapter 3 of the Indiana Product Liability Act provides:
Sec. 1. (a) This section applies to all persons regardless of minority or legal disability, Notwithstanding IC 34-11-6-1, this section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.
(b)Except as provided in section 2 of this chapter, a product liability action must be commenced:
(1) within two (2) years after the cause of action accrues; or
. (2) within ten (10) years after the delivery of the product to the initial user or consumer.
However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.
Sec. 2. (a) A product liability action that is based on:
(1) property damage resulting from asbestos; or
(2) personal injury, disability, disease, or death resulting from exposure to asbestos;
must be commenced within two (2) years after the cause of action accrues. The subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action.
(b) A product liability action for personal injury, disability, disease, or deáth resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury.
(c) A product liability action for property damage accrues on the date when the injured person knows that the property damage has resulted from asbestos.
(d) This section applies only to product liability actions against:
(1) persons who mined and sold commercial asbestos; and
(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims,
(e) For the purposes of IC 1 — 1—1—8, if any . part of this section is held invalid, the entire section is void.
(0 Except for the cause of action'expressly recognized in this section, this section does not otherwise modify the limitation of action or repose.period contained in section 1 of this chapter.
Ind.Code §§ 34-20-3-1, -2.

. Section 2 explicitly "applies only to product liability actions. against ... persons who mined and sold commercial asbestos [and asbestos-related bankruptcy trust funds]." Ind. Code § 34-20-3-2(d)

. The Ott dissent argued that under Section 2, " ‘commercial asbestos’ includes asbestos incorporated into products,” and that "persons who mined and sold” means "persons who mined and persons who sold.” Ott, 785 N.E.2d at 1079, 1081 (Dickson, J., dissenting),

. We thank amicus curiae Indiana Legal Foundation for their thorough treatment of our stare decisis and legislative acquiescence precedent.

. The defendants argue that Ott did address the plaintiffs’ proposed classes. Appellees R.J. Reynolds Tobacco Co.'s and Hollings-worth & Vose’s Br, at 17, Appellee Crouse-Hinds Second Am. Br. at 23, Appellant Gen. Elec. Co.’s Br. at 24-25. A close reading of Ott, however, confirms that .this is not the case. While Ott initially noted the potential class division the plaintiffs now propose, it did not address such classification but redefined the distinction as “between asbestos victims and other victims under the product liability act.” 785 N.E.2d at 1077. Indeed, Ott’s conclusion that "the classification ... works in favor of asbestos plaintiffs” can only be true of Ott’s comparison between asbestos plaintiffs and other product liability plaintiffs, and not the classes proposed by the plaintiffs here. Id.

. We choose to address the second factor of the Collins analysis also, while recognizing that “the failure to satisfy the first prong obviates the need to discuss the second prong.” Paul Stieler, 2 N.E.3d at 1278.

. The defendants collectively urge the importance of stare decisis and the impropriety of overruling Ott. While this present case is factually similar to Ott, the Article 1 Section 23 claim is different in that it raises a new set of classes and requires a new Collins v. Day analysis. All statutes, of course, are open to new constitutional challenges, even if they have previously been upheld against a different constitutional challenge.

.Indiana Code Section 1 — 1—1—8 declares a general rule that where any provision in a statute is held to be invalid, such invalidity "does not affect other provisions that can be given effect without the invalid provision or application.” Ind.Code § l-l-l-8(a). This rule of general severability, however, does not apply “in the case of a statute containing a nonseverability provision.” Ind.Code § 1-1-1 — 8(b).

. The question the Seventh Circuit certified was: "Whether a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that, the discovery was made more than ten years after the last exposure to the product that caused the disease." Covalt, 543 N.E.2d at 384.