MASSA, J.,
dissenting.
I agree with much of Chief Justice Rush’s dissent, including, perhaps even, her observation that today’s decision is not a catastrophe. Time will tell. But I do believe it has the potential to more than chip away at the rule of law and inflict more serious damage on our Court and state, so I write separately about these concerns.
The ruling of the Court will be seen in some quarters as righting a historic injustice. Maybe so, but I must respectfully disagree. Twenty-seven years after the unconstitutionality of our statute of repose was first suggested in a dissenting opinion,[1] it is now finally the law of Indiana in asbestos cases. This unfortunate and disappointing reversal of precedent is neither warranted nor wise, in my view. My strong objections are procedural, substantive, and prudential in nature, and I will address each in order.
First, it pains me, but I find it necessary to point out that the case began with an *1170 unusual act of defiance in the trial court, when the judge (shortly before retiring) refused to apply our clear and unmistakable precedent and grant summary judgment to the defendants.[2] The Court of Appeals would have been duty-bound to apply our law and reverse,- with the question then coming to us on transfer in due course. But we instead accelerated the process[3] and rewarded this rogue order by reaching down and taking the case away from the appellate court. We now compound the error, ini my judgment, by affirming that order in a repudiation of settled law that offends staré decisis and may invite re-examination of other precedents of this Court as its membership evolves.
.Substantively, the statute of repose reflects a legislative decision to limit liability for a product’s defects where that product has existed in commerce for a decade.[4] Dague v. Piper Aircraft Corp., 275. Ind. 520, 525, 418 N.E.2d 207, 210 (1981). The apparent rationale is that after use for such a long duration, it may be unfair to hold the manufacturer responsible for product failure and the evidence may be unreliable or unavailable. McIntosh, 729 N.E.2d at 980. Moreover, as a matter of public policy, manufacturers should be able “to plan their affairs without the potential for unknown liability.” Id.
The majority finds the statute of repose here to be unconstitutional as applied to asbestos plaintiffs, despite this Court’s ruling to the contrary thirteen years ago. AlliedSignal, Inc. v. Ott, 785 N.E.2d 1068, 1076-77 (Ind.2003). Today’s holding is clever. It attempts to avoid the confines of stare decisis by discovering a “new” claim and theory, allegedly overlooked in Ott[5]; that is, a supposed prohibited “clas *1171 sification” of plaintiffs’ into those injured by miners and sellers of asbestos and those injured by products containing the substance. But there is no such classification at work in this case. Under the asbestos exception to the statute of repose, everyone injured by asbestos is in the same class: they can all — regardless of the circumstances of their exposure — sue the miners and sellers that placed the asbestos into commerce, free from the constraints of the ten-year statute of repose that prevails in all other products liability cases. Indeed, both sets of plaintiffs in the cases before us today did-just that: the Myerses sued Union Carbide Corporation, alleging it “mined and sold commercial asbestos,” R.J. Reynolds App. at 131; and the Gey-mans sued Asbestos Corporation, Ltd. and Bell Asbestos, Ltd., alleging each is a “raw asbestos fiber minér, seller and distributor.” General Electric App. at 79. In other words, if we were to accept the two classes the majority suggests experience disparate treatment, these plaintiffs would fit squarely in both.
In truth, the General Assembly has not created separate classes of plaintiffs; it has, rather, limited the pool of potential defendants who can be sued beyond ten years.[6] And, doing so is well within its authority: -“our legislature clearly has the power to abrogate or modify common’law rights and remedies.” Dague, 275 Ind. at 529, 418 N.E.2d at 213. It is the appropriate body to balance victims’ interests in recovering damages with businesses’ interests in being free from indefinite liability exposure. Scalf v. Berkel, Inc., 448 N.E.2d 1201, 1204-05 (Ind.Ct.App.1983). Indeed, the legislature has exercised ■ its discretion to restrict plaintiffs’ remedies’ and defendants’ corresponding responsibilities on other occasions. See, e.g., McIntosh, 729 N.E.2d at 973 (finding products liability statute of repose “is a permissible legislative decision to limit the liability of manufacturers of goods over” ten years old”); VanDam Estate v. Mid-Am. Sound, 25 N.E.3d 165, 172 (Ind.Ct.App.) (finding damages cap “does not classify tort victims, but only occurrences, and the legislature may properly decide that occurrences that generate' over five million dollars in liability place too great a burden on the treasury”), trans. denied, 34 N.E.3d 250 (Ind.2015).
Most importantly, the argument relied upon today is not a new one. Quite the contrary, the Ott dissent explicitly made this argument, which did not carry the day:
There are no inherent characteristics that distinguish workers with asbestos-related diseases caused by exposure to raw asbestos from those with the same *1172 diseases brought about by exposure to manufactured products containing asbestos. Thus the unequal treatment accorded to each class cannot be reasonably related to any inherent differences. With the majority’s refusal to construe Section 2 to equally treat all persons ■with asbestos-related diseases, the product liability statute of repose clearly grants to persons whose diseases derive from raw asbestos substantial privileges and immunities that do not equally belong to identically situated persons whose diseases result from asbestos-containing products. The constitutional violation is apparent.
785 N.E.2d at 1083 (Dickson, J., dissenting).[7]
The only thing that is new is the makeup of our Court, and that dissenting viewpoint garnering a third vote. And so, we are confronted with the very circumstance stare decisis exists to discourage. Marsillett v. State, 495 N.E.2d 699, 704 (Ind.1986) (“Precedent operates as a maxim for judicial restraint to prevent the unjustified reversal of a series of decisions merely because the composition of the Court has changed.”).[8] Of course, the majority insists stare decisis has not been offended, claiming it resolves the case on grounds not decided in Ott. But not only were those grounds raised in Ott, they were properly rejected as a matter of law. Through artful reasoning, the majority has engaged in stealth overruling, to the detriment of the public, confusing the law and eliminating transparency and predictability.[9]
Since Section 2’s enactment 18 years ago, the law in Indiana has been clear and predictable for litigants and for those doing business in Indiana.[10] Parties have organized their affairs in reliance on our settled law.[11] Yet today we take a time *1173 machine back to 1989, to a ease interpreting a statute before it was amended. See Ott, 785 N.E.2d at 1077 (“Covalt was decided under prior law.”). It is the resuscitation • of Covalt that I find particularly-disturbing, and quite frankly, ironic, given the dissent’s worthy criticism of the tortured statutory construction employed to resolve the case. Covalt, 543 N.E.2d at 388 (Shepard, C.J., dissenting) (stating the majority is “rewriting a statute which is a model of legislative clarity”); id. at 389 (Dickson, J., dissenting) (finding the statute unambiguously applies and declaring “an appellate tribunal may not substitute its judgment for that of the legislature”). This cannot be good for a state that has taken well-deserved pride in its efficient and just litigation climate; our “courts are not a barrier to economic development.” Chief Justice Randall T. Shepard, Indiana State of the Judiciary Address: On the Way to Something Better (Jan. 11, 2012).[12] That reputation may be diminished by today’s hard turn.
Out of deference to the reasoned policy determinations of our General Assembly, and more profoundly, to our Court’s longstanding precedent interpreting those laws, I would affirm the trial court in Myers and reverse it in Geyman. I therefore dissent.

. Covalt v. Carey Canada, Inc., 543 N.E.2d 382, 389-90 (Ind.1989) (Dickson, J., dissenting).

. Notably, in his 12- and 26-page written decisions denying the defendants' motions for summary judgment, Judge Sosin doesn't posit any new theory of class distinction, including the allegedly "new” claim upon which today’s majority bases its decision, Owens-Illinois App. at 46-58; General Electric App. at 48-73. Instead, he merely opines that the dissent had the better of it over a decade ago: "This court finds the reasoning and holding of the dissenting opinion in Ott [] persuasive and consistent with current legal reasoning.” Owens-Illinois App. at 53; General Electric App, at 66. These decisions were in direct contradiction with a trial judge's obligations as an officer of tire court, for the very first rule in our judicial canons mandates that "a judge shall comply with the law,” and further defines the term “law” to include “decisional law.” See Ind.Code of Judicial Conduct Rule 1.1. Our decision in Ott could not have been any clearer, the trial court was required to apply it accordingly, and refused. After today, what is to keep another trial judge from deciding he prefers this dissent?

. Although we have such discretion, we did not have to exercise it in this case. See Ind. Appellate Rule 56(A) ("In rare cases, the Supreme Court may, upon verified motion of a party, accept jurisdiction over an appeal that would otherwise be within the jurisdiction of the Court of Appeals upon a showing that the appeal involves a substantial question of law of great public importance and that an emergency exists requiring a speedy determination.”).

. By way of background, a statute of repose is conceptually distinct from a statute of limitations, although both are at play in Indiana’s product liability law. See Ind.Code § 34-20-3-l(b) (2014). A statute of limitations is triggered by the accrual of an injury, whereas a statute of repose is- triggered by the completion of. some other act, here, the product’s delivery to the initial user, The former can be avoided or tolled by a number of equitable factors, like the discovery rule, Wehling v. Citizens Nat’l Bank, 586 N.E.2d 840, 842-43 (Ind. 1992); the latter, however, operates to prevent a cause of action — as to certain products — from arising in the first place. McIntosh v. Melroe Co., a Div. of Clark Equip. Co., 729 N.E.2d 972, 978 (Ind.2000).

. Op. at 1172 n. 10 ("While the present case is factually similar to Off, the Article 1 Section 23 claim is different in that it raises a new set *1171 of classes and requires a new Collins v. Day analysis.”).

. Although we cannot turn to legislative history for insight, we can quite clearly see lawmakers’ rational decision to rein in asbestos claims through a dialogue of sorts with our Court. We began the conversation in 1989, ■ finding raw asbestos was-not a product that could be made safer through industty development over time. Covalt, 543 N.E.2d at 385. So, we interpreted the statute of repose as being "inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body.” Id. By reason of that ruling, for nearly a decade, no statute of repose limited asbestos litigation. In 1998, however, the legislature responded by reinstating statute- of repose protection for product manufacturers but not for those who mined and sold commercial asbestos and who set aside funds for the payment of such claims. Ind.Code § 34-20-3-2; 1998 Ind. Acts 127-28. We interpreted the statute as such and upheld -it in the face of constitutional challenges. Ott, 785 N.E.2d at 1073, 1076-77. As the majority notes, the legislature has had considerable time to alter that interpretation, and it has declined to do so. Op. at 1163.

. Just a few years earlier, the same dissent made a strikingly similar argument against the general product liability statute of repose, also relying on the Equal Privileges and Immunities Clause:
The statute, on its face, distinguishes two classes of persons for unequal treatment: a user or consumer injured within ten years after the delivery of the product, and a user or consumer injured more than ten years after the delivery of the product. By artificially distinguishing as a separate class those citizens injured by defective products more than ten years old, and by forbidding them access to legal recourse for their injuries, this statute violates the Equal Privileges and Immunities Clause, Section 23 of the Bill of Rights of the Indiana Constitution.
McIntosh, 729 N.E.2d at 991 (Dickson, J., dissenting). But a majority of the Court rejected that argument, finding, "the -distinction is the age of the product that allegedly injured the claimant. Contrary to the suggestion of the dissent, there is no statutory classification of claimants. Anyone can present a claim and anyone can be barred by the statute, depending on what product is the source of the claim.” Id. at 981 (emphasis added).

. That’s not to say there can never be grounds for parting with a settled rule. A change in membership simply is not one of them.

. See Barry Friedman, The Wages of Stealth Ovemiling (With Particular Attention to Miranda v. Arizona), 99 Geo. L.J. 1, 63 (2010).

. The value of certainty and the courts' role in furthering that endeavor should not be understated. "Indiana’s judiciary is very important to commerce and the daily pursuits of most of our citizens. You simply cannot have a functioning free market economy without a fair and open forum with rules and predictable outcomes where private contracts are enforced and disputes settled.” Chief Justice Brent E. Dickson, Indiana State of the Judiciary Address (Jan. 15, 2014).

. Despite the majority’s attempt to open the door for all asbestos claims, in reversing course here, it leaves those plaintiffs who happened to discover their injury under the state of the law of the last 18 years without the array of potential defendants once again available to plaintiffs after today.

. In a 2010 study on how businesses perceive the fairness and reasonableness of state tort liability systems, Indiana ranked fourth. U.S. Chamber Institute for Legal Reform, State Liability Systems Survey (2010).